IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

DEKALB MEDICAL CENTER, INC.,

    Plaintiff,

      v.

SPECIALTIES & PAPER
PRODUCTS UNION NO. 527
HEALTH AND WELFARE FUND, et
al.,

    Defendants.

CIVIL ACTION FILE
NO. 1:13-CV-343-TWT

## OPINION AND ORDER

This is an ERISA action. It is before the Court on the Plaintiff DeKalb Medical

Center, Inc.'s Motion for Attorneys' Fees and Costs [Doc. 84]. For the reasons set

forth below, the Plaintiff DeKalb Medical Center, Inc.'s Motion for Attorneys' Fees

and Costs [Doc. 84] is GRANTED with a slight reduction.

### I. Background

This case arises out of medical care that the Plaintiff DeKalb Medical Center,

Inc. provided to the Defendant James Lastinger. Lastinger was a participant in the

Defendant Specialties & Paper Products Union No. 527 Health and Welfare Fund (the

"Fund"), an employee welfare benefit plan that provides health care services to its members.

In June, July, and October of 2011, Lastinger received medical care from the Plaintiff for complications arising from acute diverticulitis. After receiving care, Lastinger assigned to the Plaintiff all health benefits that he would be entitled to from the Fund. In addition, Lastinger also agreed to "pay [the Plaintiff] the full balance that is not reimbursed by [the Fund]."[1] On July 21, 2011, the Plaintiff submitted claims to the Fund for the services provided to Lastinger in June and July of 2011. On October 9, 2011, the Plaintiff submitted claims for services provided to Lastinger in October of 2011. The total amount sought by the Plaintiff was $129,697.06. The Fund refused to pay on the grounds that the Plaintiff committed malpractice in treating Lastinger.

The Plaintiff brought suit against the Fund and Lastinger, asserting claims under ERISA to secure payment for Lastinger's medical care. On June 9, 2014, the Plaintiff moved for summary judgment,[2] which was granted on September 29, 2014.[3] In the Order granting Summary Judgment, the Court noted that the Plaintiff was entitled to attorneys' fees under ERISA, but that it had to file a separate motion detailing the

---

[1]      Compl. ¶ 16.

[2]      [Doc. 60].

[3]      [Doc. 83].

amount due. The Plaintiff now moves for attorneys' fees and litigation costs. The Plaintiff seeks $222,573.65 in attorneys' fees and $13,603.49 in litigation costs for a total of $236.177.14.[4]

## II. Legal Standard

In a motion for attorneys' fees, the "fee applicant bears the burden of establishing entitlement and documenting the appropriate hours and hourly rates."[5] Generally, a party must supply "the court with specific and detailed evidence from which the court can determine the reasonable hourly rate."[6] Often, "[c]ourts are often faced with inadequate fee applications or with claims for hours or fee rates which seem excessive."[7] In these circumstances, "the court may make the award on its own experience . . . without the need of further pleadings or an evidentiary hearing."[8] It is "perfectly proper to award attorney's fees based solely on affidavits in the record."[9]

## III. Discussion

---

[4]     Mot. for Attorneys' Fees, at 17-18.

[5]     Norman v. Housing Authority of City of Montgomery, 836 F.2d 1292, 1303 (11th Cir. 1988).

[6]     Id.

[7]     Id.

[8]     Id.

[9]     Id.

Under the ERISA, "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party."[10] In determining the amount of attorneys' fees that a party is entitled to, the Court must first calculate "the 'lodestar,' which is the number of hours (tempered by billing judgment) spent in the legal work on the case, multiplied by a reasonable market rate in the local area."[11] Then, if necessary, the Court "has the opportunity to adjust the lodestar to account for other considerations that have not yet figured in the computation, the most important being the relation of the results obtained to the work done."[12] Here, neither party seeks an adjustment to the lodestar. They only disagree on the lodestar amount, and so the Court's discussion is limited to that issue.

## A. Hourly Rate

The Defendant argues that the Plaintiff's requested rates for the attorneys and staff members that worked on this case are unreasonable, and offers a list of alternative rates. The following table details each party's suggested hourly rate for each individual at issue:

---

[10]    29 U.S.C. § 1132(g)(1).

[11]    Dillard v. City of Greensboro, 213 F.3d 1347, 1353 (11th Cir. 2000).

[12]    Id.

| Attorney/Staff Member | Plaintiff's Rate | Defendant's Rate |
| --- | --- | --- |
| S. Derek Bauer (Partner) | $427.50 (2013) and $445.50 (2014) | $300 |
| Gary Marsh (Partner) | $517.50 (2013) | (No suggested rate) |
| Charlotte Combre (Partner) | $454.50 (2013) | (No suggested rate) |
| Darrell Solomon (Associate) | $355.50 (2013) and $373.50 (2014) | $245 |
| Bryan Bates (Associate) | $427.50 (2013) | $300 |
| Lorie Hutchins (Associate) | $337.50 (2013) and $373.50 (2014) | $325 |
| Simon Chung (Associate) | $355.50 (2014) | $245 |
| Chris Cottrell (Associate) | $315 (2014) | $150 |
| Jennifer Whitton (Associate) | $247.50 (2013) and $315 (2014) | $150 |
| Sarah West (Associate) | $301.50 (2013) | $210 |
| Greg Fosheim (Associate) | $292.50 (2014) | $150 |
| Andrea Clark (Summer Associate) | $261 (2014) | $125 |
| Sarah Cundiff (Paralegal) | $148.50 (2013) and $153 (2014) | $100 |
| Andrew Bodammer (Research Analyst) | $166.50 (2013) | $125 |
| Alyson Clabaugh (Research Analyst) | $180 (2014) | $125 |

| | | |
|---|---|---|
| Khaleeda Thomas (Research Analyst) | $171 (2013) | $125 |
| Lou Ellen Runyan (Research Analyst) | $175.50 (2013) | $125 |

Generally, a reasonable hourly rate is the "prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation."[13] Establishing "a claimed market rate is the [fee applicant's] burden."[14]

In support of its requested hourly rates, the Plaintiff first submits an affidavit from Bauer, the Plaintiff's lead counsel in this matter. According to Bauer, the hourly rates are based upon the standard rates charged by the law firm of McKenna Long & Aldridge.[15] In fact, Bauer testified that the "hourly rates charged to [the Plaintiff] in this matter represent a *ten percent (10%) discount* off of the standard rates charged by McKenna Long & Aldridge."[16] And what an attorney typically "charges clients is powerful, and perhaps the best, evidence of his market rate; that is most likely to be

---

[13]    <u>Dillard</u>, 213 F.3d at 1354 (internal quotation marks omitted).

[14]    <u>Id.</u>

[15]    Bauer Aff. ¶ 21.

[16]    Bauer Aff. ¶ 21 (emphasis added).

what he is paid as determined by supply and demand."[17] The Plaintiff also submits an affidavit from another attorney that represented the Plaintiff in this matter: Darrell Solomon. In his affidavit, Solomon summarized Sarah Cundiff's[18] research from the *Fulton County Daily Report's* "Going Rate" survey for attorneys.[19] Cundiff looked up billing rates for attorneys comparable to Solomon, Bauer, West, Bates, and Chung, and found that their rates were similar to (and sometimes lower than) rates charged for similar services by attorneys with comparable experience.[20]

In response, the Defendant submits no evidence. Instead, the Defendant relies on another case from this Court where a motion for attorneys' fees was granted: Gaylor v. Greenbriar of Dahlonega Shopping Ctr., Inc.[21] The Defendant argues that, in Gaylor, certain rates for attorneys with various levels of experience were found reasonable, and so those rates must apply here. Although the Court found that the plaintiff's requested rates in Gaylor were reasonable, the Court did not hold that rates that are any higher would necessarily be *unreasonable*. Indeed, as the Eleventh Circuit

---

[17]     Dillard, 213 F.3d at 1354-55 (internal quotation marks omitted).

[18]     During the times relevant to this Motion, Sarah Cundiff was a paralegal at McKenna Long & Aldridge.

[19]     Solomon Aff. ¶ 3.

[20]     Solomon Aff. ¶¶ 6-17, Exs. 1-6.

[21]     No. 2:12-CV-00082-RWS, 2014 WL 2195719 (N.D. Ga. May 27, 2014).

explained, courts are "seldom presented with one figure as a prevailing market rate . . . fee rates vary from lawyer to lawyer, case to case, and client to client" so that there will be "a range in prevailing market rates."[22] Given that the Defendant fails to address the evidence submitted by the Plaintiff – and fails to provide any of its own – the Court concludes that the Plaintiff's requested rates are reasonable given the experience of the Plaintiff's counsel and the circumstances of this case.

### B. Number of Hours

The Plaintiff submits two documents to establish the number of hours its attorneys, and their staff, spent on this case. The first document describes the number of hours spent on each task (e.g., the Complaint, discovery motions, legal research).[23] The second document includes a table describing, with detailed narratives, the tasks performed by each attorney on a given day along with the amount of time spent on each task.[24] The Defendant argues that the Court should not award attorneys' fees for certain hours claimed by the Plaintiff's counsel. Fee applicants "must exercise . . . 'billing judgment.'"[25] They must "exclude from their fee applications excessive,

---

[22]    Norman, 836 F.2d at 1300.

[23]    Bauer Aff., Ex. A.

[24]    Bauer Aff., Ex. B.

[25]    ACLU of Georgia v. Barnes, 168 F.3d 423, 428 (11th Cir. 1999).

redundant, or otherwise unnecessary [hours] . . . which are hours that would be unreasonable to bill to . . . one's adversary irrespective of the skill, reputation or experience of counsel."[26] Parties "opposing fee applications have obligations, too."[27] They must provide "objections and proof . . . concerning hours that should be excluded" which are "specific and reasonably precise."[28] Exclusions "for excessive or unnecessary work on given tasks must be left to the discretion of the district court."[29]

The Plaintiff submits that its counsel spent 650.50 hours in representing the Plaintiff in this matter.[30] The Defendant provides three reasons why certain hours must be excluded. First, the Defendant argues that the Plaintiff is improperly seeking compensation for hours spent pursuing claims against James Lastinger, the individual who received medical care at the Plaintiff's facility. The Plaintiff's attorneys spent time pursuing claims against Lastinger and seeking relief from an automatic stay entered in Lastinger's bankruptcy proceedings. The Defendant argues that the fees tied

---

[26]     Id. (internal quotation marks omitted).

[27]     Id.

[28]     Id. (internal quotation marks omitted).

[29]     Norman, 836 F.2d at 1301.

[30]     Bauer Aff. ¶ 26.

to those hours may not be shifted to the Defendant. But the Plaintiff made it clear that it included Lastinger as a party for the purpose of obtaining discovery from him in order to strengthen the Plaintiff's case against the Defendant. In fact, in its Initial Disclosures, the Plaintiff expressly noted that it was seeking a consent order from the bankruptcy judge providing "relief from the automatic stay in Mr. Lastinger's bankruptcy case where Mr. Lastinger would remain a party to this suit solely as a nominal defendant, subject to written discovery and deposition" and that it was "in no way proceeding against Mr. Lastinger or the assets of his bankruptcy estate."[31] Accordingly, the Court will award attorneys' fees for time spent pursuing claims against Lastinger.

Second, the Defendant argues that the Plaintiff's attorneys spent an excessive amount of time preparing its summary judgment motion. In support, the Defendant simply points out that "seven attorneys or research assistants worked on Plaintiff's Motion for Summary Judgment" and that the "Plaintiff's counsel billed approximately 202 hours on tasks associated with researching, drafting and revising" the Motion.[32] Thus, the Defendant claims that the "Plaintiff's fees related to its Motion for Summary

---

[31]   [Doc. 12].

[32]   Def.'s Resp. Br., at 13; see also Def.'s Resp. Br., Ex. C.

Judgment should be reduced by a minimum of 50 percent."[33] This objection is in no

way "specific and reasonably precise." The Defendant does not refer to any specific

time entries or explain why the hours recorded were unnecessary. Even in general

terms, the Defendant provides no reason why 202 hours is an excessive amount given

the issues involved and the nature of the Motion for Summary Judgment – a Motion

which produced a 137-page Order in which the Plaintiff prevailed. Indeed, this case

involved well over a thousand pages of medical records, and the Defendant advanced

a number of theories in response to the Plaintiff's claim.[34] Nevertheless, after

reviewing the Plaintiff's counsel's time sheets, the Court concludes that two time

entries are excessive. On March 13, 2014, attorney Jennifer Whitton conducted legal

research on the standard for appealing a denial of benefits by an ERISA plan

administrator and drafted that portion of the brief.[35] Based on the description, Whitton

simply researched and summarized a general legal standard, and was not required to

apply it to the facts of this case. This task took 8.4 hours.[36] This is excessive. The

court will reduce that amount by 5 hours. During this time period, Whitton billed at

---

[33]     Def.'s Resp. Br., at 14.

[34]     Pl.'s Reply Br., at 10-11.

[35]     Bauer Aff., Ex. B at 15.

[36]     Bauer Aff., Ex. B at 15.

a rate of $315 an hour, and so the fee award will be reduced by $1,575. In addition, on March 14, 2014, Whitton conducted legal research regarding "attorneys fees awardable in ERISA suits" and drafted that portion of the brief.[37] Again, it appears that Whitton simply researched and summarized a general legal standard. For this, Whitton spent 6.5 hours.[38] The Court will reduce this amount by 4 hours. Thus, the fee award will be reduced by another $1,260.

Finally, the Defendant argues that the Plaintiff's counsel engaged in "block billing," and so their submitted hours must be reduced. Generally, a fee "applicant should . . . maintain billing time records in a manner that will enable a reviewing court to identify distinct claims."[39] However, attorneys often engage in "block billing," which "occurs when an attorney lists all the day's tasks on a case in a single entry, without separately identifying the time spent on each task."[40] In a previous case, the Eleventh Circuit approved a party's "solution [to block billing] of dividing each day's hours by the number of tasks listed and assigning the quotient to each task."[41] Courts

---

[37]    Bauer Aff., Ex. B at 15.

[38]    Bauer Aff., Ex. B at 15.

[39]    Hensley v. Eckerhart, 461 U.S. 424, 437 (1983).

[40]    Ceres Envtl. Servs., Inc. v. Colonel McCrary Trucking, LLC, 476 Fed. Appx. 198, 203 (11th Cir. 2012).

[41]    Id.

"have also approved across-the-board reductions in block-billed hours to offset the effects of block billing."[42] After reviewing the time entries, the Court concludes that the Plaintiff's attorneys did not unreasonably engage in "block billing." Although the attorneys occasionally included more than one task in a single time entry, they did not abuse the practice;[43] at least not to a degree where a reduction in hours is warranted. To show otherwise, the Defendant simply refers to one time entry by one attorney, which reads: "Review files; Prepare for deposition; Draft and revise deposition outline; conference with D. Bauer regarding the same."[44] This is not an unreasonable form of block billing. As the Plaintiff correctly notes, "each task is specific and related: the biller prepared for, outlined, and discussed with the supervising partner, an upcoming deposition."[45] Accordingly, the Court will not reduce the number of hours for which the Plaintiff may seek attorneys' fees on account of any alleged block billing.

---

[42]    Id.

[43]    See Bauer Aff., Ex. B.

[44]    Bauer Aff., Ex. B. at 13.

[45]    Pl.'s Reply Br., at 13.

**C. Litigation Costs**

The Defendant argues that the Plaintiff is not entitled to recover for costs relating to electronic research. In support, the Defendant claims that such costs are considered standard "overhead expenses," and so the Plaintiff's counsel must absorb those costs. The Court agrees. Recoverable litigation costs generally do not include "routine office overhead normally absorbed by the practicing attorney."[46] Multiple courts have found that costs associated with electronic research databases – e.g., Westlaw – are part of a law firm's overhead, and cannot be recovered as litigation costs.[47] As one court explained:

> [I]t is a somewhat prevalent practice, where the client will permit it, for lawyers to seek reimbursement of the time charges made by WESTLAW for research facilities. The Court, however, is satisfied that this is properly an item attributed to firm overhead. The Court assumes that the actual time of a lawyer utilizing the research computer facility is, in fact, booked at his normal hourly rate. The Court thinks it inappropriate and

---

[46]    Dowdell v. City of Apopka, Florida, 698 F.2d 1181, 1192 (11th Cir. 1983).

[47]    See, e.g., Carpenters Health & Welfare Fund v. Coca-Cola Co., 587 F. Supp. 2d 1266, 1272 (N.D. Ga. 2008) ("[T]he research service is a tool, much like a computer or a pen, and this Court considers the use of such a service part of a firm's overhead."); Bultema v. G & H Fitness, Inc., No. 6:05-CV-1651-ORL-28DAB, 2006 WL 5085251, at *2 n.3 (M.D. Fla. June 22, 2006) ("The Court typically does not award the cost of electronic research, which is part of overhead."); Friskney v. American Park & Play, Inc., No. 04-80457-CIV, 2007 WL 675974, at *3 (S.D. Fla. Mar. 1, 2007) ("[T]he Court . . . is of the opinion that expenses for computerized legal research are part of the general overhead of a law firm and are not compensable.").

unreasonable to permit an overhead item of this type to be recovered in addition to recovery for the time of the lawyer who used the research facility.[48]

The Plaintiff requested $13,603.49 in litigation costs.[49] Of that amount, the Plaintiff requested roughly $9,511.52 for electronic research costs.[50] Because the Court will not allow recovery for electronic research costs, the Plaintiff is entitled to $4,091.97 in litigation costs.

## IV. Conclusion

For these reasons, the Court GRANTS the Plaintiff DeKalb Medical Center, Inc.'s Motion for Attorneys' Fees and Costs [Doc. 84]. The Plaintiff is entitled to $219,738.65 in attorneys' fees and $4,091.97 in litigation costs, for a total of **$223,830.62.**

SO ORDERED, this 13 day of July, 2015.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge

------------------------

[48]    Auburn Police Union v. Tierney, 762 F. Supp. 3, 5 (D. Me. 1991).

[49]    Bauer Aff., Ex. C.

[50]    Bauer Aff., Ex. C.